OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas. For the reasons stated herein, this court affirms the judgment of the trial court.
Appellant, Ace Transportation, Inc., ("Ace"), sets forth the following assignments of error:
"ASSIGNMENTS OF ERROR
 "ASSIGNMENT OF ERROR NO. 1.:
 "THE TRIAL COURT ERRED WHEN IT FOUND THAT CONTINENTAL'S POLICY WAS NOT AMBIGUOUS AND THUS, DID NOT AFFORD COVERAGE.
 "ASSIGNMENT OF ERROR NO. 2.:
 "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE COVERAGE EXCLUSION OPERATED TO EXCLUDE COVERAGE TO HASTINGS BECAUSE THE VEHICLE WAS UNDER A SERIES OF PERMANENT TRIP LEASES CONSTITUTING A PERMANENT LEASE AND HASTINGS WAS NOT `IN THE BUSINESS OF' THE CARRIER (ACE) AT THE TIME OF THE ACCIDENT.
 "ASSIGNMENT OF ERROR NO. 3.:
 "THE TRIAL COURT ERRED WHEN IT FOUND HASTINGS WAS ACTING `IN THE BUSINESS OF' ACE AT THE TIME OF THE ACCIDENT REQUIRING ACE TO PROVIDE COVERAGE AND/OR INDEMNIFY HASTINGS."
The following facts are relevant to this appeal. This insurance coverage dispute between two insurers arises from a motor vehicle accident that occurred on September 19, 1994. Appellee, Continental National Indemnity Company, ("Continental"), the non-trucking carrier for Charles W. Hastings d.b.a. J-KEL Leasing, ("Hastings") filed a declaratory judgment action[1]
seeking a declaration that it had no duty to defend Hastings in any actions as a result of the accident that occurred on September 19, 1994, pursuant to a provision of its policy with him. The provision, part of an endorsement, provided, in part, that:
 "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
"TRUCKERS-INSURANCE FOR NON-TRUCKING USE
"Individual Policy
 "If this endorsement is shown as applicable to a covered automobile described in ITEM THREE of the Declarations, LIABILITY INSURANCE, UNINSURED/UNDERINSURED MOTORISTS COVERAGE, AND ANY PERSONAL INJURY PROTECTION COVERAGE for the covered automobile is changed as follows:
"A. The following exclusions are added:
"This insurance does not apply to:
"* * *
 "3. A covered automobile without a permanent lease unless only 10 days have elapsed since termination of a permanent lease." (Emphasis sic.)
Hastings had entered into a "Master Lease Agreement" ("MLA") with Ace on the day of the accident, September 19, 1994. The MLA provided that Hastings, as an independent contractor, would lease his motor vehicle equipment to Ace "from time to time during the course" of the MLA; the term of the MLA was one year. The MLA further provided that:
 "1. [Hastings] owns or has exclusive possession or control of certain motor vehicle equipment which it hereby arranges to lease to [Ace] from time to time during the course of the Master Lease Agreement, together with drivers therefor under the terms and conditions set forth here * * *.
 "4. This lease shall be activated by oral agreement of the parties as to a particular movement and evidenced by issuance of a Trip Certification (Manifest) for such a movement described below by [Ace] and/or its Agents. Each such implementation of this lease shall end upon delivery of the merchandise specified in such documents. * * *
 "5. It is agreed that the performance of this Lease shall be in accordance with the requirements of the Interstate Commerce Commission, all state bodies, and the Department of Transportation of the United States (such rules and regulations and requirements being collectively referred to as `government requirements').
"* * *
 "9. It is understood that the leased equipment under this Agreement is in the exclusive possession, control, and use of [Ace] for the period covered by each individual Trip Authorization (Manifest) and [Ace] assumes full responsibility in respect to the equipment it is operating to the public, the shippers, and regulatory authorities during those periods. It is agreed that [Ace] will carry public liability and property damage insurance at levels no less than those levels prescribed by the United States Department of Transportation and Interstate Commerce Commission."
On September 19, 1994, Hastings was assigned by Ace to take a load of steel from Detroit, Michigan to Maumee, Ohio; he arrived in Maumee at approximately ten that night. After he dropped off his load in Maumee and while traveling back to Michigan, Hastings was involved in an accident.
Ace and Continental filed motions for summary judgment. The trial court granted summary judgment in favor of Continental and denied Ace's motion for summary judgment. Ace filed a timely notice of appeal.
In reviewing the grant of summary judgment, this court must apply the same standard as the trial court. Lorain Nat'l.Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
This court will address appellant's second assignment of error first. In its second assignment of error, Ace argues that the MLA was substantially a permanent lease which covered a series of trip leases for a one year duration. This court finds no merit in this assignment of error.
In this assignment of error, Ace argues that the series of trip leases constituted a permanent lease. However, such an argument ignores both the MLA and the definitions provided in applicable CFR sections. The first paragraph of the MLA provides that Hastings will lease to Ace "certain motor vehicle equipment * * * from time to time during the course of the Master Lease Agreement." The fifth paragraph of the MLA provides further support for the trial court's determination that Hastings' vehicle was under a series of trip leases, not a permanent lease. The fifth paragraph of the MLA provides that the performance of the MLA shall be in accordance with "* * * such rules and regulations and requirements * * * collectively referred to as `government requirements.'" Thus, how a "permanent" lease is defined in applicable CFR sections would be relevant.
Under the provisions of 49 CFR Section 1057 at the time the lease was entered into and at the time of the accident, leases were classified and defined according to the length of time the lease was to be in effect. A "trip" lease was a lease of equipment, such as a tractor, by a common carrier, with or without a driver, for less than thirty days. 49 CFR, Section 1057.2(g). If the equipment was leased to the carrier for thirty days or more, the agreement was referred to as a "permanent" lease. 49 CFR Section 1057.2(f).
Although the duration of the MLA was for one year, the first paragraph of the MLA provided that Hastings would lease his equipment to Ace "from time to time during the course of the Master Lease Agreement." Additionally, the fourth paragraph of the MLA provided that each trip would begin by oral agreement and end upon delivery of the cargo. There is no indication in the MLA that, when Hastings would lease his equipment to Ace "from time to time," the length of these trips would be thirty days as required for a "permanent" lease. Therefore, the trial court did not err when it determined that a series of trip leases did not constitute a "permanent" lease.
Accordingly, appellant's second assignment of error is found not well-taken.
In its first assignment of error, Ace argues that the trial court erred when it found the "permanent lease" exclusion in Continental's policy with Hastings was not ambiguous and that Continental need not provide coverage for Hastings. This court finds no merit in this assignment of error.
The established rule in Ohio is that courts enforce insurance policies using the rules of construction that apply to contracts generally. Hybud Equip. Corp v. Sphere Drake Ins. Co.,Ltd. (1992), 64 Ohio St.3d 657, 665. Moreover, words and phrases used in an insurance policy must be given their natural and commonly accepted meaning. Gomolka v. State Auto. Mut. Ins. Co.
(1982), 70 Ohio St.2d 166, 167-168.
The endorsement to Continental's policy with Hastings provided that the insurance did not apply if the vehicle was "without a permanent lease unless only 10 days have elapsed since termination of a permanent lease." Although Ace argues that a "permanent" lease is ambiguous, as noted supra, when the MLA was entered into, a "permanent" lease was unambiguously defined in 49 CFR Section 1057.2(f). Therefore, the trial court did not err in finding that the exclusion for vehicles without a permanent lease in Continental's policy with Hastings was not ambiguous.
Accordingly, appellant's first assignment of error is found not well-taken.
In its third assignment of error, Ace argues that the trial court erred when it determined that Hastings was acting "in the business of" Ace at the time of the accident, citing a Michigan appellate case in support of its assignment of error. Ace argues that Hastings' delivery of Ace's shipment in Maumee, Ohio terminated his business for Ace and, therefore, he was not "in the business" of Ace, and Continental should provide coverage for Hastings. This court finds no merit in this assignment of error.
This argument was rejected by the Tenth Appellate District in Canal Ins. Co. v. Brogan (1994), 93 Ohio App.3d 765. The court in Canal Ins. Co. cited St. Paul Fire Marine Ins. Co.v. Frankart (1977), 370 N.E.2d 1058, for the proposition that return trips are part and parcel of providing transportation services for a carrier-lessee. Id. at 772-73. See, also,Cincinnati Ins. Co. v. Haack (Dec. 5, 1997), Montgomery App. No. 16375, unreported.
Accordingly, appellant's third assignment of error is found not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J., JUDGE
Melvin L. Resnick, J., JUDGE
Mark L. Pietrykowski, J., JUDGE
CONCUR.
[1] Several personal injury actions filed against Hastings were consolidated in the trial court. Those actions are not part of this appeal.